Judge Tucker.
The special verdict in this case differs in some particulars from that upon which the Court decided the 20th of October, 1808.(1)
In this case, the Jury find, that John Baylor executed a deed of trust to James Brown, to secure the payment of 819/. 7s. 9d. sterling, due to Donald &? Burton, merchants in London, in three equal annual instalments, by the shipment of tobacco to their address, on which they were to be allowed a commission of one guinea per hogshead; “ and, in case of non-shipment of the tobacco, a further “ sum in each payment, equivalent to and in lieu of the “ usual mercantile commission thereon, at the rate of one u guinea per hogshead, and estimating each hogshead to “ be worth 10/. sterling: then James Brown, on the re- “ quest of Donald Burton, was to sell, &c. the lands in “ the ejectment mentioned.
*230 “ They find that, after executing the said deed, Baylor “ did ship and consign to the said Donald is? Burton 105 “ hogsheads of tobacco, agreeably to the covenants in the be- “ fore-mentioned deed.
“ They find that Donald & Burton advanced other sums “ of money for the use of Baylor, as exhibited by an ac-u count which they find in hcec verba; and that the deed “ of trust in the said account mentioned, is the same as “ the one before set forth.” But they do not find, nor does the deed of trust mention, that the same was to stand as a security for any future advances which Donald id Burton should make to Baylor.
They also find, that a suit was instituted for the recovery of the balance due on the last-mentioned account, and a verdict and judgment entered for 200/., which has simó been paid.
They then find the sale of the lands by Brown, (after advertising the sale thereof once,) and the purchase thereof by Pollard, and a deed of bargain and sale for the same from Brown to Pollard, which, after reciting the deed of trust from Baylor to Brown, proceeds thus: “ And whereas “ the said fohn Baylor failed altogether in shipping to the “ said Donald is? Burton any part of the tobacco in the said “ deed mentioned, and also neglected to pay to the said “ Donald id? Burton, or any other person for them, any “part of the debt mentioned in the said deed, to be due “ from him to them, or the interest thereon, and the sum “ of money in lieu of commissions, so that the whole “ amount thereof became due and payable by the said “ John Baylor to the said Donald id Burton, after the 24th. “ day of August, 1793, (when the three years during “ which the payments were to have been made expired,) “ and the said Donald is? Burton did afterwards request “ the said fames Brown in writing, to sell, &c. in conse- “ quence of which, &c. the lands were exposed to sale, “ &c. and Pollard became the purchaser,” &c,
*231 The District Court upon this special verdict gave judgment for the defendant. And I am of opinion, that judgment Was correct. For the Jury have expressly found the shipment of tobacco, which, according to the valuation in the deed, (made for a different purpose, I admit,) must have amounted to much more than the debt and interest; thereby expressly negativing and contradicting the statement of facts contained in the recital of the deed to Pollard; and they have moreover found, that the balance actually due (though not that which was claimed) on the account exhibited by Donald Si Burton, hath been actually paid. Upon this state of facts, I am of opinion, that enough appears upon this verdict, for the Court to give judgment in favour of the defendant, and that the same be affirmed.
With respect to the question, whether this contract be Usurious, I learn from a note in the hand-writing of the late Judge Pendleton, which is, accidentally, in my possession at present,' that in a former suit between the same parties, grounded upon this very contract, it was determined by this Court to be usury by the nature of the contract appearing in the instrument itself. I was previously of the same opinion, in which I am the more confirmed by that decision.
Let it be supposed, that after entering into this contract, Mr. Baylor had purchased bills on London to the amount of his whole debt and interest, and had there tendered the money to Donald it? Burton: might they not still have insisted that he should pay them eighty guineas more in lieu of the commission of one guinea per hogshead, at the rate of 10/. sterling per hogshead, which he was to allow them by this contract ? Or suppose that fifty hogsheads of tobacco had sold for as much as the whole debt would amount to. Must he not still have paid the commission of a guinea per hogshead, according to these stipulations, on thirty hogsheads more than paid his debt ? Here, then, is a condition arising out of this contract for further forbearance, that the debtor should in any event be liable to pay eighty guineas (amounting to about ten per cent.) *232 more than Ins original debt and interest. This, I conceive, brings the case fully within the statute. For Baylor could not, by any means whatever, discharge himself from the obligation to pay this additional premium over and above his debt and interest.
Judge Roane.
This is the third case which has come before this Court between the present parties, and grounded upon the same deed, viz. the deed of 24th August, 1790.
As to the first case, I do not recollect whether the account current, which is contained in the present special verdict, was also to be found in it, nor do 1 remember the particulars of that verdict: but the Court went fully into the question of usury suggested to arise upon the construction of that deed, and were equally divided upon that question. I was one of those who thought the deed not usurious, in which opinion Judge Lyons concurred. As that opinion has never been published, and perhaps never maybe in any particular report of the case, I will beg leave to read it as a part of my opinion on the point of usury in the present case. It was delivered on due deliberation, and I have since seen no cause to change the result therein •contained.
[Here Judge Roane read the opinion now alluded to, which see in the note below.(1)]
*233 In addition to the reasons contained in this opinion, I will beg leave to say, with Judge Lyons, in his opinion delivered in the same case, “ that in questions of usury the *234 tc intent is more to be regarded than the words 5 that Do- •“ nald Burton were commission-merchants in London, “ and desirous of extending their trade by procuring con- “ s gnments of tobacco, the profits of which trade, in ad- “ dition to that of securing the debt due to them, were *235 i£ their object; and that it was a lawful object, being in the ££ course of their business.”
Such was the opinion of a moiety of the Court, in the first case of Pollard v. Baylor. As for the note mentioned by the Judge who preceded me, and said to contain the opinion of Judge Pendleton on this point of usury, it is true that the judgment of the District Court thereupon was affirmed; but it was only by the equal suffrages of the Judges of this Court. No man has a greater veneration for the memory of that great judge than myself: but his opinion in a case in which he did not sit, which he had not heard argued, and did not take the trouble to study, ought not to be quoted as an authority. It is even less than an extrajudicial and obiter opinion.
In the next case between the same parties, this Court reversed a judgment in favour of the defendant, on account of certain defects in the special verdict. In reversing that judgment on that ground, and thus keeping alive the controversy between the parties, the majority of the Court undoubtedly adjudged and admitted the deed of 24th August, 1790, not to be usurious: for else, cui bono, send back the parties to make their case more complete ? why not at once put an end to the controversy ? why continue a tedious litigation between the parties, if the Court thought that, upon the foundation of that controversy, the party claiming can never be entitled to recover? As to this point, the decision of the Court, a few days ago, in the case of Murdock and others v. Herndon's Executors, is a satisfactory authority. In this second case of Pollard v. Baylor, this question of usury was argued at length by the bar: when, therefore, the Court sustained the cause, and took measures to have a more perfect verdict rendered, did it not virtually at least, overrule an objection which strikes at the very foundation of the claim ? did it not, in effect, decide, that the deed of August, 1790, was not usurious?
Taking it, then, both upon the merits of the question as aforesaid, and upon the decision in the second case just mentioned, which, otherwise, ought not to have called for *236 a more perfect verdict, that the foundation of this claim is not objectionable, it remains to inquire, whether the special verdict now before us is adequate or not to sustain a judgment for the appellant under the standard setup by this Court in relation to the verdict contained in the second ease, just mentioned.
On a minute comparison of the present verdict with that contained in the former case, 1 think the present verdict at least as imperfect as the former one, I will endeavour to state the particulars.
The verdict in the former case was condemned, and the judgment reversed, on three grounds: 1st. That it was not found whether,' at the time of the execution of the deed of 24th Avgust, 1790, James Brown was the agent of Donald Burton, and, as such, received the indenture from Baylor. This objection equally applies to the present verdict. There is nothing more on this point found in this case than in the former. It is true it is found, that the account current stated in the verdict was ■ rendered by James Brown, attorney for Donald Burton: but this merely relates to the time of its presentation, viz. January, 1795, and that Brown was then attorney for Donald Burton; it does not establish the fact of his agency as at the time of the execution of the deed, 2dly. Another objection to that verdict was, that it was not found whether the publication of the time and place of sale was duly niade, agreeably to the terms stated in the-deed, but that the Jury found evidence only ; (i. e. the advertisement itself;) but that finding is stronger than the present in this particular; for, in that case, it was found that James Broxvn did duly advertise the sale of the land, which word “ duly” would seem to extend also to the number of times of publication required by the deed, whereas in the present case it is only found that the sale was made, James Brown “ having advertised the same on the 10th of March in the Virginia GazetteIt is neither found that it was duly advertised as in the former case, nor more particularly, that it was advertised four weeks, according to the *237 requisitions of the deed. These two objections to the former verdict apply, therefore, with equal force, at least, to the one before us. A third objection made to the former verdict was, that it was not found that the 105 hogsheads of tobacco were shipped “ in pursuance “ fulfilment of the covenants in the deed of trust,” or “ to “ meet bilk drawn on Donald Burton at the time of such “ shipments.” This objection does not apply to the case before us, for it is found in this verdict, that the defendant “ dirl ship and consign to Donald & Burton 105 hogsheads w of tobacco, agreeable to the covenants in the said deed.”
But, in lieu of this last objection, another presents itself which did not exist in the former case, ft is not found in this case, as it was in the former, that James Brcwiivas requested in whiting, by Donald Burton, to sell the premises in question, as required by the terms of the deed. This requisite is essential to the legality of a sale, and ought to be found; for the defendant did not mean to subject his land to be advertised and sold at the pleasure of the agent, but only of the principals, in whose liberality and honour he may have had more confidence.
There is, perhaps, still another defect in the present finding, which also existed in the former case, but was not noticed in the judgment of the Court. By the terms of the deed, the agent was not to sell the whole trust property to pay a small sum, but only “ as much as should be “ needful,” for raising the amount of the principal and interest of any instalment which should remain unpaid, with a further sum adequate to the commission stipulated on the sales; i. e. 21i. per hogshead. To this sum, thus com - pounded, the opinion of the Court in the former case seems to have added, as I think ought to be added, all moneys due “ for bilk drawn on Donald Burton, at the “ time of the shipments of the tobacco.” Now, although f have no doubt but that all the bills stated in the account current in truth fall within the above description, yet this is not found by the verdict, nor stated in the account itself, except in relation to the first bill for 165/. drawn Sept. 22, *238 1 ’/90. By a rough calculation which I have made, the balance of principal and interest of the original sum secured by the deed left due by the proceeds of the tobacco shipped, added to the commission on 105 hogsheads of tobacco, according to the terms of the deed as aforesaid, and to this advance of 165/. will fall short of the sum actually raised by the sale of the land and negroes by the sum of 382/. or thereabouts; and therefore it would seem by the verdict before us, that more of the land and negroes were sold than was justified by the terms of the deed; But (as before said) having no doubt but that all the bills mentioned in the account were for advances made at the time of the respective payments"; and, if so, as they ought,according to the opinion of the Court before mentioned, to make part of the sum for which the trust property was liable to be sold; I should think that this fact should be left open to be supplied in the verdict in future, and thus the sale actually made of the trust property stand justified as to the whole sum raised thereby.
The result of my opinion is, that the foundation of this claim being free , from objection on the ground of usury or any other objection, both upon my own deliberate opinion on the point, and by the judgment of the Court in the former case, (which, otherwise, ought to have affirmed the judgment for the defendant on the merits,) that still the verdict before us should be set aside, and a venire de novo awarded; first, on the ground of the two (and perhaps three) objections common to this case with the former, as I have endeavoured to point them out; and, on this additional ground, that it is not found in the present verdict, that fames Brown, the agent, was required in writing to make the sale in question, without which, under the provisions of the deed, it ought not to have been made.
Judge Fleming.
When this extraordinary contract was under the consideration of this Court on a former occasion in another suit between the same parties, I was clearly of opinion that the contract was- usurious, and gave my rea *239 sons pretty much at large; and to that opinion I beg leave to refer. (1) Since the last able and ingenious argument of *240 the case, I have reconsidered it, with yery great attention^ and the more I reflect upon it, the more am I convinced of *241 die correctness of my former opinion, that it has usury stamped upon the very face of it; and no shift, covin, device, or deceit, appears in order to evade the statute, (and such, I am authorized to say, was the opinion of Mr. Pendleton, a late venerable and enlightened President of this Court,) and it appearing as well on the face of the deed itself, as by the verdict, that James Brown, a principal party to the deed, was the agent of Donald & Burton, the contract was void ab initio ; and without considering any other point in the cause, I am of opinion, that the judgment of the District Court is corregí, and ought to be affirmed.
By a majority of the Court, the judgment of the District Court AFflElED.

 The opinion of the Court, pronounced on the 20th of October, 1808, in another ejectment, between the same parties, and founded on the same deed, was, “ that the judgment was erroneous in this, that “ the Jury have not found whether, at the time of the execution of the ** indenture of the 24th of August, 1790, by John Baylor to James « Brovin, the latter was the agent or attorney of Donald (S? Burton, and as such, received the said indenture from Baylor; and also in this, “ that they have not found whether the 105 hogsheads of tobacco, «* stated to have been shipped by the said John Baylor to Donald £5’ “ Burton, were by the former shipped to the latter in pursuance and “ fulfilment of the covenants in the deed of trust in the said verdict set “ forth, or to meet his bills drawn on Donald is? Burton, at the time “ of such shipments; and further, in this, that they have not found “ whether the publication of the time and place of the sale of the land “ and slaves in the said deed mentioned was duly made, agreeably tc “ the terms stated in the deed ; but have found evidence only.”
The judgment was therefore reversed, (by the unanimous opinion ef the Court, consisting of Judges Fmsmikg, Roaxb, and Tucker,) and a new trial directed.

 Opinion of Judge Roane, in the case of Pollard v. Baylor.
“ With respect to the first objection made by the appellee’s counsel, « there is nothing in it. The appellant’s attorney did not exhibit the « deed in question as a mere immaterial paper; but, as he tells us in “ Ills exceptions, to support his declaration. But, after that paper s' was rejected by the Court, it would have been improper to have “ gone on and shewn, how his title was derived under it.
“ Nor have I any difficulty upon the question of usury. The agree- '< ment was to pay a sterling debt, with interest, by instalments, in to- « bacco, to be consigned to the creditor, who was to have the accus- ■“ tomed commissions for selling. It was further agreed, that in case of failure of payment in that mode, the principal, with interest, and *233 ,£ the amount of tlie commissions, should be paid here, by means of a “ sale of the property conveyed. If the covenant had been performed “ by the appellee as contemplated, it was clearly unobjectionable. So “ in the event, -which has happened, I think the commissions must ci- “ tiler be considered as a penalty from which the appellee might: have “ delivered himsi-lf, and therefore the contract was not usurious, or “ as a stipulated rate of damages, previously agreed upon by tlie “ parties, for an injury produced by non-compliance.
£t I will view the case, first, as before a failure, and on the face of u the deed itself; and, secondly, as under the event which has hap-5< pened.
“ /' a to the first view, it is rightly held by Judge Butlers in Tate v. “ Willings, 3 Term Rep. 539. that the question is, Whether a contract <! wits usurious or not, as at the time it was entered into ; for, if tlie “ contract was legal at that time, no subsequent event can make it usurious. The s-me doctrine is lic-ld by I.ord Mansfield, in the case of Floyer v. Edwards, Cowp 115. It is also held ill the last cape by “ the same Judge, ;and I adopt these positions, bee,use I think them “ right,) that usury is an agreement to pay, originally, the principal, ‘‘ with greater interest than five per cent. In the case before us, con- " sidered as ft the time of the contract, tlie commissions could not be “ considered as an addition to the legal interest, but as a compensation 11 for a service contracted and intended to be performed ; and, conse- “ quently, as no greater interest than the law allows is reserved, the “ contract is not usurious.
“ This position, that a contact is to be adjudged as at the time of “ its date, without reference to posterior events, in fact shuts up this “ question. But I will notwithstanding consider it in the other aspects
“ In the event which has happened, the appellee is compelled to pay “ a slim over and above tlie principal and interest, s', e. the amount of “ the commissions contemplated. It is true, that, in no event, could “ the appellee have avoided the payment thereof; but in the event con- ** templated by the contact, viz. that of his shipping tlie tobacco, lie “ could liare converted them into a compensation for a service actually e‘ performed, and, consequently, that sum would have ceased to bfe “ without consideration. It would have ceased to be an augmentation “ of the interest, if otherwise it could be so considered.
“ In this view, the case comes clearly within a well established rule, that, although a penalty be reserved, yet if the borrower had it in “ his power to comply, and avoid tlie penalty at a certain day, the cam *234 “ tract is not usurious. To constitute usluy, the borrower must be “ bound, in all events, to pay a greater interest than the law allows; “ but in this case he was not so bound, but might, by complying with “ his contract, have turned this penalty, as it is now called, into acom- “ pensation for a service actually performed.
“ If it be said, that, by the contract, the consiguees are not bound to “ sell the tobacco, and therefore the commissions are without a consi- “ deration ; the answer is, that in that event, it is, as it were, a sale to “ themselves ; and that the service is the same to the consignor, wlxether retained (as if sold) by themselves, or sold to others.
“ The case of Tate v. Willings is very applicable to our case. There “ a greater interest than 5 j>er cent, was reserved on the sum lent5 .« but, because the borrower might have delivered himself therefrom “ within a limited time, by paying stock, the contract was held not to “ be usurious.
“ The case of Morse v. Wilson, cited by Mr. Call, does not apply. “ For there, in addition to the legal interest, profits of a trade were “ granted, from which the borrower could not have delivered himself, <l and which therefore formed an addition to the legal interest.
“ In every view of the case, then, the contract is not usurious. If “ the contract had been performed, the commissions would have beca “ given for a bona jkle and valuable consideration; As it was not per- “ formed, the penalty arises, not from the contract itself, but from the “ breach thereof by the appellee; and because he did not deliver him- « self therefrom by performing his agreement.
“ It was well observed, that here are no extrinsic circumstances to “ vary the construction arising from the face of the contract. If there “ were, a diffei'ent conclusion might follow. If, for example, it had “ been agreed collaterally, that the tobacco should not be shipped, “ or other circxxmstances existed shewing plainly, that it was well un- " derstood by the parties, that the tobacco could not or would not be “ shipped. These, or such like circxxmstances, might induce the Court “ to consider the contx’act as i'eally a shift to evade the statute.
“ But the contract is a mere naked one, and, on its face, I clearly “ hold it to be not usurious.
“ I am, therefore, of opinion, that the judgment of the District Court “ ought to be reversed, and a new trial awarded, with directions to “ admit the deed in question as evidence to the Jury.”

 The following was Judge Flemistg’s opinion, alluded to above.
“ Three questions seem presented in this case;
“ 1st. Whether the contract between John Baylor and James Broun “ be usurious ?
“ 2d. Whether Broun was the agent of Donald & Burton at the time Ci of the contract ? and,
“ 3d. Were not 105 hogsheads of tobacco shipped by Baylor, and “ consigned to Donald is* Burton, agreeably to the contract ? and ought “ not the whole proceeds to have been applied iu discharge of the debt “ then due ?
“ 1. With respect to the first point, it appears, that Baylor, being “ largely indebted to Donald Idf Burton, (who had immediate right to “ recover their debt by legal process,) and being thus in their power, “ and at their mercy, was induced, in consideration of their forbear- “ anee for one, two, and three years, to enter into the ruinous contract “ before us, thus becoming a loan which is altogether in favour of the “ creditors, without any equality or reciprocity between the parties, “ and having usury stamped upon the very face of it. Baylor had only this “ alternative, either to discharge the debt of the shipment of tobacco, “ (for which he was to have credit for just as much as they might please “ to allow him,) after deducting a commission of 21 shillings sterling “perhogshead, (let it be sold for what it might,) or submit to have “ the trust estate sold for ready money, and pay (over and above all “ expenses incident thereunto) a commission of 21 shillings sterling- “ for every 10 pounds on the amount of the sales.
“ The first alternative was clearly against the debtor and in favour of “ the creditors, because the less they gave him for his tobacco, the higher “ commission they secured on the collection of their debts, and the more V freight on their shipping. By the contract the debt was to have been “ paid at three annual instalments of 273/. 2s. 7d. each, with interest at “ 5 per cent, per annum on each instalment from the date of the deed ; “ to be paid by shipments of tobacco to the creditors, estimated at and “ understood by the contraciing parties to be worth 10/. sterling per “ hogshead, and held out as a lure to Baylor. The first instalment, with “ the. interest, amounted to 286/. 15s. 8d. Hqrs. which 29 hogsheads of “ tobacco would have overpaid 3/. od. 2qrs., the commission on “ which would have been 30/. 9s. The second instalment, with interest, “ amounted to 300/. 8s. 10d. which 30 hogsheads of tobacco would have discharged, save 8s. tOrf. The third and last instalment would *240 “ have been 314/. Is. lid. 2qrs., which 32 hogsheads of tobacco would " have overpaid 61. 19s. 0d. 2qrs. the commission on which would have " been 33/. 12s. The whole commission, then, would have amounted to "’95/. 11s. and the debt overpaid 91. 14s. 6d. by the shipment of 91 hogs- " heads of tobacco.
“ It appears by the verdict, that, long before the expiration of three " years from the date of the contract, Baylor shipped an consigned to " the said Donald & Burton 105 hogsheads of tobacco, ‘ agreeably to " ‘ covenants in the afore mentioned deed,’ and the amount of the “ sales thereof was not applied in discharge of the contract, but a new " account raised between them, and instead of 10/. per hogshead, as “ estimated by the parties at the time of the contract, accounts of sales “ of the 105 hogsheads of tobacco are rendered by Donald & Burton, “ through their agent James Brovin, at the average price of 6/. 16s 11 d. “ per hogshead, só that, instead of the debt and interest being dis- “ charged by the shipment of 91 hogsheads of tobacco, and a commis- " sion to the creditors of 95/. 11s., it would require 131 hogsheads of " tobacco to discharge the debt, and the debtor pay a commission of “ 1371. 11«. besides the loss of 31. 3s. Id- per hogshead, on 105 hogs- “ heads of tobacco, already shipped agreeably to contract. As to the " other alternative, the sale of the trust estate, and the very extraordi- " nary commission on the amount of sales, Mr. Randolph, in his argu- “ ment, contended, that it was no hardship on Baylor, because ‘ that " ‘ extra commission must be considered as a penalty which he might " ‘ have avoided by the shipment of tobacco.’
“ We have already seen that he had shipped 105 hogsheads of to- " bacco, agreeably to the covenants in the contract, for which, instead “ of 10/. as estimated by the contracting parties, they give him credit " for 61.16s. lid. and the greater part of the proceeds applied to other " purposes. But had the whole been applied in discharge of the original “ debt of 819/. 7s. 9d. and Baylor had continued to ship tobacco till the “ whole was paid, with interest, he would have sustained a loss of “ 42/. for extra commissions, and of 3/. 3s. Id- per hogshead on 131 " hogsheads of tobacco, amounting in the whole to 455/. 3a. lid. and " thus much in discharging a debt, which, with interest from the date " of the contract, amounted only to 9011. 6s. 6d. The loss on the sale of the trust estate, unrighteously made, cannot' with precision be " ascertained ; but it must have been enormous, as two thousand acred “ of land, near the Bowling Green, in the County of Caroline, and ele- " ven prime young negroes, with the increase of two families for about *241 “ five years, sold only for 9857 These calculations are made to shew f£the unreasonableness and injustice of the contract, which dire uer.es- ££ sity compelled Baylor to submit to. It is true, that the party in whose» “ favour the contract so manifestly appears to be, has used no ‘ shift, “ ‘ covin, device, or deceit, (exocpt^holding out the idea that 107 ster- “ ** ling' per hogshead’ was to be received for the tobacco, in order to ,£ receive more than legal interest for the forbearance or giving day of *£ payment of the money in order to evade the statute, but has como “ boldly forth in dt fiance of the law, and stamped usury on the lace of ££ the contract, which renders it utterly void ab initio. From this view “ of the case, then, it appears to me, 1st. Th.it the contract being ££ usurious, was void in itself; 2d. That by the original deed of 1790, “ exhibited by the appellant, and under which he claims, it appeal’s? ££ clearly to my mind, that James Brovin was the agent of Donald & a£ Burton, but, had there been any doubt on the subject, he is found by “ the verdict to have been their attorney; and, 3dly. That the whole ££ proceeds of the 105 hogsheads of tobacco ought to have been applied "£ in discharge of the original debt, supposing the contract to have been. ££ a legal one.”